Number 181914, United States v. Jamil Roman Thanks Thank you Good morning, Mr. Prom Good morning. May it please the Court, Randall Prom, on behalf of the United States, if I could reserve two minutes for rebuttal, please? You may have it. Thank you. The District Court's order suppressing evidence in this case should be reversed because there was probable cause to search the defendant's residence based on established propositions accepted by this Court on multiple occasions. The first is that there is not direct evidence of nexus required. A nexus, in fact, can be inferred from the nature of the crime, the nature of the evidence sought, opportunities for concealment, and ordinary inferences about where evidence might be kept. What's your best connection to the residence? I've read these briefs fairly carefully. What is your best evidence that there was any real connection to the residence? Well, I think one thing it's important to realize is what they were looking for in this case. It wasn't simply the search warrant didn't see simply evidence of drug dealing, drugs itself, proceeds, records of drug keeping, but also evidence of unexplained wealth, jewelry, other financial instruments, evidence of ownership. Because what we're talking about here is an enormously large-scale operation, bringing in $1.6 million for the cocaine alone, in which he was supposed to be the primary distributor for that, according to the affidavit. And that would mean, among other things, that a lot of money was passing through his hands. While we focused a lot on the evidence of drug dealing in cases like Feliz, that was a lot of the information. We were talking about, in those cases, very small quantities, hand-to-hand deals of seven or eight grams. Here we're talking about 20 kilograms a month of cocaine, in which he's supposed to be the distributor. And part of what we were looking for was not just evidence of the drug dealing, but where his wealth may have been coming from, what may have happened with that money. And that was part of what was being asked. The district court just rejected that outright, that there is simply no support for that proposition. The court goes on to say, the focus really was on Gonzales. Yes, Gonzales had been involved in transactions that was a claim for over years, but there was no indication how long the defendant had been involved in these transactions. And the suggestion that he, too, had been involved for that period of time is just pure speculation. What's wrong with the district court's assessment and rejection of Special Agent Smith's suggestion that he, too, had been involved in drug activity for an extensive period of time? For one thing, I'm not sure that that's what Agent Smith was suggesting. I think the part that was stricken where it said that he was a known drug trafficker, and that was a particular statement that was stricken from the affidavit. The affidavit did not say anything about the length of time during which Roman had been involved. Well, that hurts you, doesn't it? Well, that's why I'm saying, in respect to the question, that that's not something on which the district court simply noted the absence. Our argument, as we've pointed out, is that... We can affirm on any grounds evidence in the record. I go back to Judge Stahl's question. You have no evidence that this particular defendant, who has some form of association with Gonzalez, is a long-standing drug dealer or a drug dealer of large quantities. You have now shifted your rationale from what was presented to us in the briefs from, gosh, if somebody associates with a drug dealer, we have the right to go search their homes, to a rationale of, if someone's involved in drugs, there will be a lot of cash, and therefore we can go look for cash in people's homes. Homes are different. Agreed? Agreed. All right. So why was the district court wrong in saying, you just haven't come up with enough evidence to warrant search of a home? That's my first question. My second question is, why is the government taking an interlocutory appeal in this case? Is it that you can't prove your case without the money found in the home? Well, we are required to say that there's significant evidence in the case. That's a baseline for us taking an appeal from a suppression order. So we've made the representation that it's significant to the case. I would like to respond to the question, though. The government has not shifted positions. Judge Stahl asked what one of our best arguments was, and one that's, I think, important to note is not all of the evidence was related to drug dealing specifically. But we stand by the fact that the inferences in this brief, in the affidavit, well established that he was an experienced drug dealer of large amounts. It's important to note that the affidavit went through a Frank's hearing, and certain statements were stricken. The fact that he was a close associate who oversaw distribution for a multi-kilogram per month operation was not stricken. Nor were the facts that he was involved in distributing four kilograms to the cooperative. Nor were the facts that he participated in meetings in which the amount of drugs available and his need to make payment were shown. Nor were the facts that there was a meeting in which Gonzales told the cooperative that he could pay himself or Roman. Roman, at that point, the cooperative, owed $200,000. This court has repeatedly stated, in talking about the scope of the conspiracy, that we can infer the conspirators would not allow outsiders to participate in important activities of the conspiracy. This individual was involved in large-scale transactions himself, was knowledgeable as to where the vehicles were that had been adapted for use in transporting tens of kilograms of cocaine. He knew a lot of information that may have been inside. Whether we know exactly how long he was involved, we know he wasn't a novice. We know that from all of the foregoing and the fact that he observed surveillance and told the cooperative that he was going to shut down and cool down for a while. The inference from that is that he understands what surveillance is, and he knows how he's supposed to react. These are all things that support the inference of a large-scale drug dealer. That's not to say that there's specific statements beyond that, but from that one can infer it, and the district court's view of the inferences is something that this court is in a position to decide for itself. What is the standard of review here? You, at one point, seemed to suggest that it's de novo reviewed. Is that correct? That seems quite wrong, so I'm curious. First of all, is that fair? Is that what you're suggesting? I do want to clarify because I think there's an important point there. The Supreme Court has suggested in other circumstances that there's an intermediate standard, the due weight, which is entitled to inferences of the officers and the district court. With respect to pure factual matters, that is, what is actually said, those are clear error. But here we're talking about inferences from the facts. We're not veering from the four corners of the affidavit. We're talking about reasonable inferences, and there is some deference that this court has quoted to some of those inferences. But we would suggest to the extent that we're arguing in a way different from specific inferences, particularly the inference that he was an experienced drug dealer, we believe the information in the affidavit clearly establishes that for the reason we're talking about. A person who's a close associate oversees distribution for an operational society. And this issue of you described how that the district court, I think you're saying the district court was simply wrong, whatever standard review you would apply, was simply wrong to not draw the inference that this individual was involved in extensive drug activities. And so the cases that say that if there's extensive drug activity, you can draw certain conclusions about what will be found in the residue. You're saying that we shouldn't review that issue de novo? That as his failure to draw that inference, we should review that de novo? I think, to be honest, the way the court states it, it's a little unclear to me what the appropriate standard review is. To the extent the court is simply saying that this is the way that it views this information against probable cause standard, that's reviewed de novo. To the extent that's an inference that he draws as to what the events actually occurred, this court has suggested that an intermediate standard of due weight applies. And because the way that it's written into the opinion, it's actually somewhat unclear to us whether the court's meaning is just simply that it did not draw that as an inference establishing probable cause, or whether it did not believe that was a proper inference at all. But we do believe that under either standard, that the affidavit amply supports that basic proposition that he was an experienced and highly involved drug dealer in a very large scale operation. Are you saying, by the way, that we should ignore the district court's ruling that the affidavit was not believable? Well, I think the important thing to realize is the Franks sets the remedy for this. The Franks remedy assumes that there may be, in fact, an intentional or recklessly false statement. The remedy is to strike that and move on with the four corners of the affidavit. We are not relying on anything that was stricken, but with respect to what remains, in our view, that is proper before this court. We would also note, as we do with respect to the statements that he seemed to particularly question, which is the issues based on a training experience, that there was no contrary evidence. While the district court declined to give him much weight, there was no suggestion that those were not, in fact, true of his training experience. Nothing like that was raised in the Franks hearing. Judge Lopez has asked some very good questions about the difference between de novo review of the inferences and giving some weight to the trial judge who actually heard the agent testify. Aren't we at a disadvantage reading a cold record to say that the inferences that the trial judge drew are wrong? Well, my understanding at this stage is that the four corners of the affidavit are before this court in the same way that they were in front of the district court. The magistrate judge is the one who made the determination, and that's reviewed for a substantial basis in the remaining affidavit following Frank's ruling. It's the affidavit as reformed. But I don't think, with respect to what remains, that the position of this court is any different in terms of what are the reasonable inferences to be drawn and whether it's established as probable cause. You seem to have been suggesting in response to Judge Stahl that Franks limits our ability to give deference to the trial judge who, because Franks prescribes as a remedy, all you can do is strike from the affidavit the stuff that the trial judge doesn't believe. But in real life, isn't the fact that the trial judge did not believe the agent found he was in fact lying, and in real life, wouldn't that somewhat color the inferences that he would draw? And why shouldn't we defer to that? Well, I think that the question is beyond the – I think that, as was said before, and I don't want to say inconsistent things between my answers to these questions, I believe that Franks does prescribe the remedy in terms of what is before – properly before this court. I believe that there may be a duet standard that applies to some of the inferences drawn. But I don't believe that Franks – while it certainly may be realistic to assume that in an egregious case where the affidavit was entirely disbelieved, that this court would have to take that into account, the district court was also in the best position to decide what to strike and what to leave in. And while certain statements were stricken, we have not challenged that. So what we are relying on is everything else that's in the affidavit. And we do not understand if this court's role is – Oh, my, you've put quite a burden on trial judges to be sure to strike absolutely every line in an affidavit that they might have questions about. But I believe that that's what Franks – Otherwise – It supposes that the court will identify the troubling language in a minute. Otherwise, the Franks remedy doesn't make a lot of sense. Notwithstanding what are known to be falsehoods, in some cases intentional falsehoods. No, of course the Franks remedy makes sense. You don't draw that conclusion. No, but Your Honor, I simply want to say that I do understand Franks to suggest that the solution is to strike the fending language and then to consider the reformed affidavit. And we believe here, including any statements entitled to a duet standard, that there was sufficient evidence here to bring it within the scope of cases suggesting this was an experienced drug dealer who would have evidence in his home. Okay, thank you. Good morning, Your Honors. May it please the Court, Ashley Allen on behalf of the defendant appellee, Jameel Roman. Seated at council table is co-counsel, who's also on the brief. And present in the courtroom today is Mr. Roman as well as his wife. This case solely concerns the nexus element of probable cause of search of one's home. However, for the government to win here, this court must effectively do away with this nexus element and hold that a suspect's status as a drug dealer or his affiliation with a drug dealer. No, not so fast. I think you need to address Judge Lopez's concern about whether the scope of our review is de novo or deferential on what you say is the key issue, the nexus requirement. Absolutely. And I would like to address that. Regarding the findings of fact, credibility, as well as the inferences drawn therefrom, it is a clear error standard. And it's up to the appellant to raise that on appeal and argue that these things were clearly erroneous based on the record before the court, the district court. He's in the best position to view the witnesses. He's in the best position to determine whether or not the inferences. Clear error on inferences? I'm sorry, excuse me? We use clear error for findings of fact. You're saying in this area we would use clear error for inferences drawn from the facts? Yes, from the inferences drawn from the facts. And what's your best case? I believe it is McGregor. USB McGregor. As well as the inferences need to be drawn in favor of the suppression ruling. Here the suppression ruling was to suppress the evidence. So in a case where the defendant is formally appealing, you draw the inferences in favor of the suppression being denied. Here it was allowed. And then regarding credibility, this is not just a case where he found that he questioned the credibility. He found that he lied within the warrant numerous times, including stating that the information within the warrant was based on his personal knowledge or could be attributed fairly to another officer. Counsel, to some extent it seemed to me that the district court was using the credibility of Special Agent Smith in an odd way. For example, the agent obviously had extensive experience dealing with drug investigations and prosecutions. And he made the observation that given that extensive experience, that he would anticipate that someone like the defendant here might well have at his residence the drugs themselves, proceeds. And so the district court says, well, given the misrepresentations that I found in the affidavit, I do not find him credible. To me there seems to be a disconnect between having reservations about his credibility on specific facts relating to this case, but to simply dismiss that might be characterized as a form of expert testimony based on his long years of experience because of those credibility reservations. It doesn't make any sense to me. How do you defend his dismissal of that assertion about what inference can fairly be drawn from his experience with his credibility? I just don't understand how that works. Respectfully, I don't think he completely dismissed the opinion, evidence, and the experience of this officer. What he said is that the force and the weight of it is significantly compromised. And this is one factor to consider and a number of factors in the totality of circumstances to establish that the reasonable inference here is that drugs or money or unexplained wealth is going to be found in somebody's home. And I would just note that this unexplained wealth argument is the first time this has been raised in this courtroom. And so with the training experience, I agree. I'm like Mr. Cromdell. I have the same reaction. I don't think I had heard that before. I would like to know whether that was raised for the first time. I did not recognize that from anything in the briefs. This is the first time I've heard of it. And what I think that he's referring to is the case of U.S. v. Keene where they said this defendant has unexplained wealth. We know he has unexplained wealth. He's working from home. And so, therefore, this is part of the probable cause. Here he's now saying that this is something that they need to figure out with the warrant is whether or not he had unexplained wealth. There's no allegation in the affidavit that there was unexplained wealth. There's no allegation about how much these drugs would have worked. Okay, so let's go back to the experienced agent point. He says, based on my experience as a law enforcement agent, I would expect to find what at the house? Drugs? He used very common terms. What did he say? I apologize. I don't have that at my fingertips right now, the exact language of the affidavit. But I believe it was boilerplate language that stated that he would find drugs and contact information, phones. You know, one of the middle things that you're going to, that those statements usually... Did he say large amounts of cash? Yes. I would say that he did say that. But there's no allegation within the warrant that there's some sort of unexplained wealth on his part. Okay. Cash and unexplained wealth are different things. And regardless, this is just one factor to be weighed. And I would like to address the longtime successful drug trafficker issue, whether or not that may permit the inference that a suspect is likely to keep the evidence in his home. And here, everything draws in the opposite way when it comes to whether or not there was additional properties that possibly could have contained this stuff. Here, it's very different from Rivera, which was a close case. And this court said they may very well have come out differently, even though there was a stash house. And so we're not saying that you can't seek warrants for multiple properties. It's just that the inference that drugs or money or what have you is going to be found in someone's home is significantly weakened when there's evidence of other places. And here, that goes directly towards Gonzalez being the one who is the distributor here and the one that the warrant focused on. And this very well could have been a result of having one affidavit for seeking six different search warrants. Had they chose to go a different route, we might have a little bit more information as to the nexus to a home. Counsel, Mr. Cromb is correct, isn't he, when he makes the point that there are a lot of cases for the proposition that your client would not be in proximity to Gonzalez, would not be trusted with the role that he clearly had, at least for some transactions, unless he were a trusted confidant, the kind of confidence that only develops over time. And isn't it also true that he made the somewhat knowing observation that, well, yeah, maybe there was surveillance activity going on, but it sort of dried up, suggesting that he knows how to look for that. I mean, those are not the observations, one could argue, of a novice. And again, this sort of trusted confidant role, we have said that in a lot of cases, have we not? That is correct. Now, here, though, he's drawing that inference from the one statement in the affidavit that says that Mr. Roman was a close criminal associate of Gonzalez and oversaw the distribution of narcotics. First, with a vague and conclusory allegation, as the district court correctly found, and you must provide some underlying facts. Second, the government says that you can infer from the statement that he's an experienced trafficker. That's contrary to the district court's findings that he was an established drug dealer. And the difference between established and experienced, I'm not really seeing the difference. When it comes to established drug dealers, they didn't say in the warrant that he was an established drug dealer. The court considered Feliz and said, I'm looking at Feliz, and in this case, Stan is a far cry from the facts in Feliz. We can't say that he's a long-time successful drug trafficker, and I can't infer that he was established because there's no support in the record. There's no time frame, and there's no basis in fact to infer that. They did not raise this inference as clear error, and now they're asking this court to infer that based on the warrant allegations that he's experienced. The district court struck the allegation that he's a known trafficker and struck any reference to prior dealings with the confidential source as to kilograms of cocaine. The only allegation you have is on one occasion, January 14th, prior to that, that there was some delivery of four kilos to the confidential source's business. That's all we have, and when it comes to a nexus to his residence, it's a very bare bones allegation that he has had a utility service put in there and that he has driven a vehicle that is registered to that address. Wasn't there something in the warrant about carrying out a heavy package for the residence? To be clear, that was not from the residence, and I take issue with that. First of all, there was a bare allegation in the warrant that stated that Mr. Roman parked on the sidewalk next to Kano Hughes Tire, which is the business owned by Gonzalez. He then walks into the business with a weighted bag, drives his car in, and leaves. There's no evidence as to what car he was driving to say that that was the same vehicle that was registered to the residence. There's no indication, surveillance one way or another, before or after that. We would have to infer that that weighted bag had some sort of evidence of a crime. Every single case that this court has said you can properly draw the inference from the status of the drug dealer or the nature of it, if I may just finish this last point. Yes, go ahead. Every one of those, there's either some evidence of leaving the property, his residence, and going to a drug deal or returning to his property, or there's evidence that there was no other possible headquarters for these things. Here you have to remember that in none of those cases was the affidavit found incredible or was the very truthfulness of the affidavit called into question because of the material misrepresentations made in reckless disregard for the truth that were not challenged on appeal. Given the bare bones of the affidavit and the misrepresentations, we would ask that this court affirm the district court's order of suppression. Thank you. Thank you. Your Honor, to respond to the question that Judge LaPaz has, the response in focusing on that sort of unexplained wealth or that particular aspect, I was merely answering to Judge Stahl's question about what was the best connection specifically between the house and the activity, not attempting to reframe our argument. Our argument is that the sum total of the large scale of this activity, the fact that it existed at multiple locations, the large sums of money, the fact that if he's remorsefully receiving $200,000, he's not going to be driving it around a long time. If it happens at his house, he's going to keep it there. That's the kind of inferences that we were relying on. I merely added that it's important to note that the affidavit sets forth several different categories of information because one of the arguments raised by defendants was that some of this information would be more likely to be held at a business. That's not the standards. The standard is just a reasonable probability, a fair reasonable belief that it would exist there under the probable cause standard. That's the standard. It doesn't matter if it might be more likely somewhere else. I want to point out that some of the information sought, the sort of natural inference goes the other way, that jewelry are a title. Counsel, did you or did you not, before the district court raised the unexplained cash argument that you are relying on here, you have stood here and said, oh gee, I was just answering the question I got from one of the judges. That wasn't our question to you. Our question was, did you make this argument in the district court? Yes or no? I did not make the specific argument focused that way. Okay, thank you. The focus of the argument, but the focus of the affidavit is on the totality of the case. Counsel, thank you. Another. Thank you.